IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER LIND,

    Plaintiff,

v.

ATLANTA INTERNATIONAL
SCHOOL, INC.,

    Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Jennifer Lind ("Plaintiff" or "Ms. Lind"), by and through undersigned counsel, and files her Complaint for Damages against Defendant Atlanta International School, Inc. ("Defendant"), and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages for Defendant's violation of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA"), the Family's First Coronavirus Response Act of 2020

("FFCRA"), and those sections of the Family Medical Leave Act ("FMLA") and Fair Labor Standards Act ("FLSA") specifically incorporated by the FFCRA.

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117.

3.

Defendant does business in this judicial district.  Additionally, the unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

During the relevant time period, March 2017, through September 8, 2020, Plaintiff was employed by Defendant.

6.

Defendant is licensed to conduct business in this district.

7.

Defendant employed Plaintiff during the relevant time period.

8.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

9.

Plaintiff is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*., in that she had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her request for FMLA.

10.

Plaintiff is a female citizen of the United States of America and a resident of the State of Georgia and at all such times, Plaintiff was an "employee" of Defendant as defined under 42 U.S.C. § 12111(4).

11.

During all times relevant hereto, Defendant has employed fifty or more employees, within a 75-mile radius of Plaintiff's employment, for the requisite requirements under the FMLA.

12.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4).

13.

During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA.  Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

14.

Defendant may be served with process via its Registered Agent, Paul Saeger, at 2890 North Fulton Drive, Atlanta, GA 30305.

## **ADMINISTRATIVE PROCEDURES**

15.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on October 16, 2020.

16.

The EEOC issued a "Notice of Right to Sue" on February 17, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

17.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## **FACTUAL ALLEGATIONS**

18.

Defendant hired Ms. Lind as a substitute teacher in or about March 2017, and was soon after hired as full-time faculty for the 2017-2018 school year.

19.

Ms. Lind has a disability and/or perceived disability.

20.

More specifically, had been diagnosed with premature ovarian failure, a condition that leaves her immunocompromised.

21.

Ms. Lind also suffers from asthma.

22.

In addition, Ms. Lind is the primary caregiver for both her elderly parents, who also suffer from a variety of medical ailments themselves.

23.

On or about March 17, 2020, as a result of the COVID-19 pandemic and along with the majority of schools across the country, Defendant began virtual learning.

24.

Ms. Lind continued performing her job duties while from home for the duration of the Spring 2020 semester, including both teaching classes and working as a German Language Coordinator.

25.

On or about June 3, 2020, the Director of Human Resources at the time, Tamara Rambus, sent out an email to the faculty concerning an employee survey about returning to campus in August.

26.

The email indicated that employees should reach out to Ms. Rambus, "if you have a condition that places you at high risk according to the CDC and which you believe would interfere with your ability to return to work safely on campus in August."

27.

In response, Ms. Lind reached out to Ms. Rambus and explained her medical conditions and the issues presented with teaching in-person.

28.

Ms. Rambus thanked Ms. Lind for letting Defendant know so that they had plenty of time to prepare.

29.

Although Ms. Rambus did not request that Ms. Lind provide any supporting documentation, Ms. Lind asked her medical provider to send a letter to AIS.

30.

On or about June 10, 2020, Ms. Rambus acknowledged receipt of the medical accommodation request (i.e. for Ms. Lind to continue remote teaching).

31.

On or about July 23, 2020, Ms. Lind had her medical provider send another written request that stated, "Ms. Lind is under my care. I recommend that she not take part in classroom education currently. She can take part in remote education.

32.

Again, Defendant acknowledged receipt of Ms. Lind's request.

33.

On August 3, 2020, Ms. Rambus sent Ms. Lind an email with the subject, "Your Medical Accommodation Request."

34.

In the email, Ms. Lind was notified that her request to teach remotely was approved for the first four weeks of school.

35.

The email indicated that Defendant was "approving alternative work arrangements in four week time periods."

36.

No further information was requested, and Ms. Lind continued to prepare for the start of the school year.

37.

On the morning of August 17, 2020, Ms. Lind held Zoom meetings with both her G3 and G4 German classes.

38.

Afterwards, she met with her G4 colleagues, and then with the Digital Coach.

39.

Ms. Lind was taking all necessary steps to ensure the successful start of the 20-21 school year.

40.

That afternoon, Ms. Lind was scheduled for a virtual meeting with Ms. Rambus and the Head of Primary School, Maria Voutos.

41.

Ms. Lind was told that in order to continue in her position as a teacher, she would have to come onto campus and teach in person.

42.

Ms. Voutos asked Ms. Lind if she was going to resign, to which Ms. Lind responded no, she was not resigning because she could continue to teach virtually.

43.

Defendant then terminated Ms. Lind's employment.

44.

Defendant did not require Ms. Lind to perform any job duties after August 17, 2020, but paid her through September 8, 2020.

45.

Defendant made a veiled attempt to appease Ms. Lind by offering that she could continue performing her Language Coordinator duties remotely, but this was not an accommodation, as these additional duties were beyond the scope of her original position, and did not accommodate her medical conditions.

46.

Defendant refused to engage in any additional dialogue concerning Ms. Lind's requests to work remotely full-time while the community was continuing to deal with the COVID pandemic.

47.

Defendant failed to engage in the interactive process with Ms. Lind, even though doing so would not have been an undue hardship.

48.

Defendant also did not provide Ms. Lind leave as provided under the FFCRA.

49.

Instead, Defendant denied her leave, in violation of the FFCRA, and terminated her employment.

50.

Defendant terminated Plaintiff because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity and/or because she was entitled to the protections of the ADA.

51.

Employees outside of her protected class, i.e. employees who were not disabled and/or not immunocompromised, were treated differently, i.e. not terminated.

52.

Plaintiff was qualified to perform her position, and had a positive performance history.

53.

Plaintiff could have performed the essential functions of her position with an accommodation, as she had been doing the months before she was terminated.

54.

Defendant did not terminate Plaintiff because her requests presented any actual undue hardship, but rather due to the financial greed of the company.

## **CLAIMS FOR RELIEF**

## **COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA**

### 55.

Plaintiff re-alleges paragraphs 18-54 as if set forth fully herein.

### 56.

Plaintiff has a physical impairment which substantially limits one or more major life activities and leaves her immunocompromised.

### 57.

Plaintiff's pshycial impairment is a "disability" within the meaning of the ADA, as amended.

### 58.

Defendant was aware of Plaintiff's disability.

### 59.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

### 60.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

61.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

62.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

63.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

64.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

65.

Defendant treated other employees outside Plaintiff's protected class differently.

66.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of

the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

67.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

68.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

69.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

70.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

71.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

72.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

73.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

74.

Plaintiff re-alleges paragraphs 18-54 as if set forth fully herein.

75.

Plaintiff has a physical impairment which substantially limits one or more major life activities and leaves her immunocompromised.

76.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

77.

Defendant was aware of Plaintiff's disability.

78.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

79.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

80.

Plaintiff requested that Defendant accommodate her disability by allowing her to continue to work remotely from home during the COVID-19 pandemic.

81.

Upon receiving Plaintiff's request for an accommodation, Defendant failed to engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

82.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

83.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

84.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

85.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

86.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

87.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

88.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

89.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

90.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  RETALIATION IN VIOLATION OF
## THE ADA, AS AMENDED

91.

Plaintiff re-alleges paragraphs 18-54 as if set forth fully herein.

92.

Plaintiff has a physical impairment which substantially limits one or more major life activities and leaves her immunocompromised.

93.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

94.

Defendant was aware of Plaintiff's disability.

95.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

96.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

97.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

98.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

99.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

100.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

101.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

102.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

103.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

104.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

105.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

106.

Plaintiff thus seeks compensatory and punitive damages pursuant to 42 U.S.C. § 12111 *et seq.*

## COUNT IV:  VIOLATIONS OF THE FFCRA

### 107.

Plaintiff re-alleges paragraphs 18-54 as if set forth fully herein.

### 108.

At all times material to this Complaint, Defendant was a covered employer under the FFCRA because Defendant has been a private employer and has had fewer than five hundred (500) employees.

### 109.

Plaintiff was an employee under the FFCRA eligible for paid sick leave and paid leave due to the fact that her physician had quarantined her because of COVID.

### 110.

On July 23, 2020, Plaintiff notified Defendant that her physician had quarantined her due to COVID.

### 111.

Because of this, under the FFCRA, to the extent that Defendant determined this rendered her unable to work, Plaintiff qualified for two weeks of paid sick leave.

112.

As a result of Defendant's willful violations of the FFCRA, Plaintiff is entitled to the pay for two weeks of leave as well as liquidated damages.

113.

By reason of the said intentional, willful and unlawful acts of Defendant, Plaintiff has suffered damages plus incurring costs and reasonable attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)     Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)     Reasonable attorney's fees and expenses of litigation;

(e)     Trial by jury as to all issues;

(f)     Prejudgment interest at the rate allowed by law;

(g)        Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)        All other relief to which she may be entitled.

Respectfully submitted the 12th day of March, 2021.

**BARRETT & FARAHANY**

 s/ *Adian R. Miller*

Adian R. Miller

Georgia Bar No. 794647

*Attorney for Jennifer Lind*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
adian@justiceatwork.com